29 A.3d 679

**Kathy MESBAHI, et al.**

v.

**MARYLAND STATE BOARD OF PHYSICIANS.**

**No. 2791, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 30, 2011.

318

320

Bradford J. Roegge (James M. Brault, Brault Graham, LLC, on the brief), Rockville, MD, for Appellant.

David E. Wagner (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, MATRICCIANI, J. FREDERICK SHARER, (Retired, Specially Assigned), JJ.

ZARNOCH, J.

Appellants and cross-appellees, Dr. Kathy Mesbahi, Mina Nazemzadeh, and Aghdas Rahmati, challenge a judgment of the Circuit Court for Montgomery County upholding the decision of the Maryland Board of Physicians ("the Board"), appellee/ cross-appellant. The Board sanctioned Dr. Mesbahi for aiding an unauthorized person in the practice of medicine and unprofessional conduct in the practice of medicine, and the remaining appellants for practicing medicine without a license. In a cross-appeal, the Board challenges the circuit court's finding that certain sanctions imposed against appellants/cross-appellees were arbitrary and capricious. The circuit court remanded the case to the Board with instructions to articulate its reasons for imposing those sanctions.

### QUESTIONS PRESENTED

Appellants[1] present the following questions for appellate

---

1. For simplicity's sake, we will refer to the parties as appellants and appellee or by name.

review: [2]

1. Did the Board erroneously rely on Declaratory Ruling 00–1 in concluding that laser hair removal is a surgical act constituting the practice of medicine?

2. Did the Board deprive appellants of their constitutional right to due process by failing to adequately notify them and the medical community about the issuance of Declaratory Ruling 00–1?

3. Was the Board required to prove that appellants knowingly violated Declaratory Ruling 00–1 to impose the sanctions against them?

In its cross appeal, appellee presents an additional question for our review:

4. Did the circuit court err as a matter of law in remanding the case to the Board in order for the Board to articulate its reasoning for exercising its discretionary authority to determine and impose fines and the cease and desist order as sanctions for violating the Maryland Medical Practice Act, Health Occ. §§ 14–101–14–702 . . . ?

For the following reasons, the decision of the circuit court is affirmed in part and reversed in part.

### STATEMENT OF FACTS

Dr. Mesbahi has been licensed to practice medicine in Maryland since 1982 and is board-certified in obstetrics and gynecology. She maintains offices in Gaithersburg and Rockville.[3] In 1999, Dr. Mesbahi purchased her first laser machine and began to perform laser hair removal in her Rockville office. Dr. Mesbahi purchased another hair removal laser in June 2003 and signed a written sales quote certifying that:

---

**2.** Appellants' brief also included the following question presented, in response to appellee's cross-appeal: "Are the sanctions imposed by the Board against appellants arbitrary and capricious?"

**3.** Dr. Mesbahi is also licensed to practice medicine in Virginia, where she maintains a third office.

[T]he [laser] medical device will be purchased by or on the order of a licensed practitioner, and used only by either a licensed physician or a licensed practitioner as defined by applicable state law. The regulations defining who can own and use a medical device vary from state to state and are subject to change. It is the buyer's responsibility to ensure that all applicable state laws are followed.

Dr. Mesbahi later signed a sales contract and initialed the page of the contract which contained the following provision:

Seller may provide educational sessions on the system ... provided, however, that the Buyer is solely responsible for the use and operation of the device in accordance with all applicable law and regulations, and for confirmation of all user qualifications. Buyer acknowledges improper use of the product carries a risk of injury to patients. Buyer represents and warrants that he, she, or it is in compliance with any and all applicable Federal, state, and local laws and regulations.

Both of Dr. Mesbahi's sisters worked in her Rockville office, Nazemzadeh as the business manager and Rahmati as the office receptionist. Neither sister is licensed as a physician, nurse practitioner, or physician's assistant. Nazemzadeh has an MBA and has been working as Dr. Mesbahi's office manager for at least twenty years. Rahmati has a bachelor's degree in "clinical lab" from Iran and worked as a hairdresser for several years before going to work as a receptionist for Dr. Mesbahi in 1989. In 2002, Nazemzadeh and Rahmati were trained by the laser machine manufacturer's representative and certified competent to perform laser hair removal procedures. Between early 2003 and August of 2005, Nazemzadeh performed approximately four to eight laser hair removal procedures a day in Dr. Mesbahi's Rockville office. Rahmati performed one to two laser hair removal procedures per day in the Rockville office between the summer of 2004 and August of 2005. Appellants do not dispute that both Nazemzadeh and Rahmati performed laser hair removal procedures, even when Dr. Mesbahi was not in the office.

## Complaints and Investigation

On December 1, 2004, a patient ("Patient A")[4] filed a complaint with the Board questioning whether Nazemzadeh was authorized to perform laser hair removal. In her written complaint, the patient complained of "permanent scars and holes" in her body, as well as hypopigmentation, as a result of laser hair removal treatments performed by Nazemzadeh. Patient A reported that she "found out from other laser places that the speedy way [Nazemzadeh] performs laser treatments, over the same spot more than thirty times, but fast, with the Light Sheer machine is incorrect and has left my body burnt all over." According to Patient A, other professionals apparently took 2–3 hours to perform a treatment that Nazemzadeh completed in 15 minutes. She wrote that Nazemzadeh would use Dr. Mesbahi's business cards to write appointments and she never saw any certifications or business cards with Nazemzadeh's name in the office, so the patient knew her only as "Mina" and was uncertain of her last name or qualifications. This complaint was later withdrawn.[5]

The Board received a second complaint from Patient A in February 2005. In this complaint, Patient A elaborated that Nazemzadeh performed laser hair removal procedures on her twice a month from November 2003 until November 2004. She claimed that the procedures left scabbing, visible scars, and/or hypopigmentation "about 22 times." Patient A began to question Nazemzadeh's competence after one particular incident where the laser gun caused her skin to "pop," leaving a "white hole" in the area. She was later told by other professionals, who used the same kind of laser as Nazemzadeh, that going over the same area of skin "over 20 times" as Nazemzadeh did was "unheard of and dangerous." Patient A

---

4. The names of all complaining patients are redacted from the record in order to protect their privacy.

5. Two weeks later, Patient A wrote a letter to the Board requesting that her complaint be withdrawn because she did not want it to be sent to Dr. Mesbahi's office. She explained that she had retained an attorney who advised her to withdraw the complaint. Patient A filed her complaint again in February 2005.

reported that she was unsure of Nazemzadeh's title or qualifications, but she assumed that she was a physician's assistant. Nazemzadeh had recommended that Patient A use Neosporin to treat her burns. When she was later interviewed as part of the Board's investigation, Patient A stated that she had met Dr. Mesbahi only once for a gynecological exam, never for laser hair removal.

Patient A suggested that the Board's investigator contact her friend, Patient B, who also went to Nazemzadeh for laser hair removal. In a telephone interview, Patient B told the investigator that she had received laser hair removal treatments from Nazemzadeh approximately twice a month for one and a half years. She stopped going in August or September of 2004 because she was concerned about ongoing exposure to the laser and she heard about Patient A's burns and scars. Patient B also told the investigator that she has had laser treatments performed by other people. In comparison, Nazemzadeh's technique was different and her sessions were much quicker. Patient B never sustained injuries as a result of her treatments. Like Patient A, Patient B reported that Nazemzadeh had performed the initial consultation and all treatments. She never met Dr. Mesbahi, even though she indicated a history of herpes simplex and accutane use on her intake form.[6]

On May 23, 2005, the Board assigned compliance analyst Patricia Bramlet to conduct an investigation of the complaints. As described above, Bramlet interviewed Patient A and Patient B. In August of 2005, Bramlet subpoenaed medical records and other documents from Dr. Mesbahi's office and took recorded statements from Nazemzadeh and Dr. Mesbahi. In October 2005, the Board sent Cease and Desist Consent Orders for Nazemzadeh and Rahmati, which they signed. Their attorney advised the Board that Nazemzadeh and Rah-

---

6. In a textbook on aesthetic laser surgery, which was part of the appendix to DR 00–1, submitted into evidence at the hearing, both accutane use and herpes simplex infection are listed as medical conditions that must be considered and resolved by a physician prior to beginning laser treatment.

mati had ceased providing laser hair removal services on August 18, 2005. Also in March 2006, Bramlet conducted a telephone interview with another patient ("Patient C") who had received laser hair removal treatments from Dr. Mesbahi's office. Patient C reported that she had received approximately five laser hair removal treatments performed by Rahmati. She took a year off from the sessions when she became pregnant, but planned to resume treatments in April 2006. Patient C stated that her April treatments would be performed by Dr. Mesbahi, but she had no concerns or issues with the care received from Rahmati.

### Hearing and Board's Decision

On April 18, 2006, Dr. Mesbahi, Nazemzadeh, and Rahmati received notice of the charges filed against them by the Board.[7] The Board alleged that Dr. Mesbahi fraudulently and deceptively used her license, that she was guilty of immoral or unprofessional conduct in the practice of medicine, and that she aided an unauthorized person in the practice of medicine by inappropriately and unlawfully delegating laser hair removal procedures to Nazemzadeh and Rahmati. In separate charging documents, the Board alleged that Nazemzadeh and Rahmati practiced medicine without a license by performing laser hair removal services at Dr. Mesbahi's office.

The cases were consolidated for a hearing, which took place on January 11, January 19, and February 2, 2007 at the Office of Administrative Hearings. Dr. Mesbahi testified in her own defense, explaining that she did not consider laser hair removal to be "invasive surgery" because there "was no anesthesia involved, no cutting, no deep penetration to the tissue, no bleeding, no sedation required." [8] Karen Wulff, a public policy

---

**7.** The Board's Opinion states that the Board charged appellants on November 16, 2005. It is unclear exactly what transpired on that date. Each appellant received a notice of charges and summons dated April 18, 2006. The Administrative Law Judge's proposed opinion notes that the charges were filed on April 18, 2006.

**8.** Nazemzadeh and Rahmati did not testify, but their prior recorded statements were admitted into evidence at the hearing.

analyst, and Bramlet, the lead compliance analyst, testified on behalf of the Board. The Board dismissed the fraud charges against Dr. Mesbahi at the beginning of the first hearing. On June 28, 2007, the administrative law judge ("ALJ") issued a proposed decision, ruling against Nazemzadeh, Rahmati, and Dr. Mesbahi on all remaining charges. In addition to the sanctions later adopted by the Board, the ALJ recommended that Dr. Mesbahi be suspended from the practice of medicine for three months.

The Board issued its final opinion and order on May 11, 2009. After adopting the ALJ's findings of fact, the Board concluded that Dr. Mesbahi aided an unauthorized person in the practice of medicine, in violation of the Maryland Medical Practice Act, Md.Code Ann. (1981, 2009 Repl.Vol.), Health Occ. Art. (HO) § 14–404(a)(2), (3) and (18), by inappropriately delegating laser hair removal procedures to Nazemzadeh and Rahmati. The Board also found that Dr. Mesbahi's actions constituted unprofessional conduct in the practice of medicine. As for Nazemzadeh and Rahmati, the Board concluded that both sisters engaged in the unlicensed practice of medicine, in violation of HO §§ 14–301, 14–601, 14–602(a) and 14–606, as well as Code of Maryland Regulations (COMAR) 10.32.02.06B(2).

The Board relied on Declaratory Ruling 00–1 in concluding that laser hair removal constitutes the practice of medicine.[9] DR 00–1 was issued by the Board on October 30, 2002, in response to a petition from the Board of Electrologists,[10] to address whether physicians may delegate laser hair removal

---

**9.** Under Md.Code (1984, 2009 Repl.Vol.), State Gov't Art. (SG) § 10–304, an interested person may petition an administrative unit for a declaratory ruling regarding "the manner in which the unit would apply a regulation or order of the unit or a statute that the unit enforces to a person or property on the facts set forth in the petition." The ruling is binding on the unit and the petitioner on that set of facts. SG § 10–305.

**10.** Electrologists are no longer governed by an independent board. They are currently licensed by the Electrology Practice Committee within the State Board of Nursing. HO §§ 8–6B–01–8–6B–29.

to non-physicians. In DR 00–1, the Board of Physicians ruled that "[t]he use of lasers for hair removal is a surgical act. Only physicians, certified nurse practitioners, registered nurses pursuant to Board of Nursing Declaratory Ruling 97–1, and physician assistants may use lasers for hair removal." [11] In concluding that appellants were guilty of the charges against them, the Board explained:

> The Board is bound by its declaratory rulings. COMAR 10.32.16.04A. In any event, none of the respondents presented any expert testimony to try to persuade the Board that the ruling should be re-examined, and the Board declines to do so.
>
> Because laser hair removal is a surgical act that may only be performed by certain licensed individuals, the use of lasers for hair removal may not be delegated to an unlicensed individual. COMAR 10.32.12.04A.

The Board also concluded that the sections of the Medical Practice Act violated by appellants do not require a finding that the appellants acted knowingly. Thus, the Board found that it was irrelevant whether appellants were aware of DR 00–1 or otherwise knew that laser hair removal constituted the practice of medicine. The Board imposed the following sanctions on Dr. Mesbahi: (1) a reprimand; (2) one year probation; (3) an order to permanently cease and desist from the practice of laser hair removal; (4) an order to permanently cease and desist aiding unlicensed individuals in the practice of medicine; and (5) a $20,000 fine. The Board ordered both Nazemzadeh and Rahmati to cease and desist from engaging in the unauthorized practice of medicine. In addition, the

---

11. The Board of Nursing issued Declaratory Ruling 97–1 on January 28, 1997. DR 97–1 allowed licensed registered nurses to perform non-surgical "laser treatments," provided that certain requirements are met including, inter alia, that the treatment is prescribed by a licensed physician who has evaluated the patient that same day and is physically present and immediately available in the office while the nurse is performing the treatment.

Board imposed fines of $5000 on Nazemzadeh and $1000 on Rahmati.[12]

In an order dated January 11, 2010, the Circuit Court for Montgomery County affirmed the Board's final decision. However, the court vacated the fines imposed on appellants and the permanent cease and desist order against Dr. Mesbahi on the grounds that they were "arbitrary and capricious because the Board did not sufficiently articulate its reasons for imposing these sanctions." The court remanded the case for further proceedings, specifically instructing that "the Board, during any such proceedings, shall articulate its reasons for imposing the fine amounts upon Petitioners and for the cease and desist order imposed upon Dr. Mesbahi permanently banning her from performing laser hair removal surgery."

## *DISCUSSION*

In Maryland, an appellate court's review of an administrative agency's decision "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative agency's decision is premised upon an erroneous conclusion of law." *United Parcel Service, Inc., v. People's Counsel,* 336 Md. 569, 576, 650 A.2d 226 (1994). *See* SG § 10–222 (discussing judicial review under the Administrative

---

12. In its opinion, the Board noted:

 In determining the amount of the fine, the Board has considered the factors set out at COMAR 10.32.02.06C(3). The Board is especially concerned about . . . the potential for patient harm brought about by Dr. Mesbahi's use of unlicensed persons to provide treatment to her patients in her office. In the cases of Ms. Nazemzadeh and Ms. Rahmati, the Board has considered the factors set out at COMAR 10.32.02.06B(3), and is again primarily concerned with the danger to the public posed by their practicing of medicine on patients without medical or any other appropriate licenses. The Board has adjusted the fines to be commensurate with each participant's degree of responsibility.

 Also attached to the opinion was the ALJ's proposed decision, which also made specific findings with respect to the sanctions and penalties adopted by the Board.

Procedures Act).[13] As appellee points out in its brief, appellants do not dispute that there was substantial evidence in the record to support the Board's factual findings that Nazemzadeh and Rahmati were not licensed health professionals and that they performed laser hair removal procedures at Dr. Mesbahi's office without any medical supervision.

Appellants' remaining arguments concern questions of law or procedure. An appellate court generally owes no deference to agency decisions on pure issues of law, and is free to substitute its judgment for that of the agency on such questions. *See Liberty Nursing Ctr. v. Dept. Of Health & Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941 (1993). However, as the Court of Appeals explained in *Finucan v. Maryland Board of Physician Quality Assurance:*

'Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency.' We, therefore, ordinarily give considerable weight to the administrative agency's interpretation and application of the statute that the agency administers. Furthermore, the expertise of the agency in its own field of endeavor is entitled to judicial respect.

380 Md. 577, 590, 846 A.2d 377 (2004) (internal citations omitted). Finally, where the agency exercises its discretionary authority, as when imposing sanctions, its decision will be

---

**13.** Specifically, Section 10–222(h) of the SG Article provides that the Court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

disturbed only if arbitrary or capricious. *See Spencer v. Board of Pharmacy,* 380 Md. 515, 529, 846 A.2d 341 (2004).

## I. The Board's Reliance On DR 00–1 In Concluding That Laser Hair Removal Constitutes The Practice of Medicine

Appellants first argue that the Board erroneously relied on DR 00–1 in concluding that laser hair removal is a surgical procedure that constitutes the practice of medicine. Appellants cite three reasons that the Board's reliance on DR 00–1 is misplaced: (1) the Board erroneously treated DR 00–1 as a binding regulation; (2) DR 00–1 is void; and (3), even assuming DR 00–1 is valid and applicable, there was not substantial evidence to support the Board's decision. We will address each of these in turn.

### A. Board's Treatment Of DR 00–1 As A Binding Regulation

As an initial matter, appellants claim that the Board improperly treated DR 00–1 as if it were binding on appellants. We disagree. The Board correctly stated that it, not the appellants, was bound by DR 00–1. *See* SG § 10–305(b) ("A declaratory ruling binds *the unit* and the petitioner on the facts set forth in the petition"); COMAR 10.32.16.04A (same). In *Baltimore City Board of School Commissioners v. City Neighbors Charter School,* the Court of Appeals explained that declaratory rulings are binding on an agency, but are "treated more in the nature of contested case adjudications than the adoption of a regulation." 400 Md. 324, 346, 929 A.2d 113 (2007). Administrative agencies do not need to strictly apply the principle of *stare* decisis when adjudicating contested cases, but "as a practical matter agencies frequently do use their prior decisions as precedents, and the standards through which a statute is implemented in one proceeding may well reappear in later proceedings." *Balt. Gas & Electric Co. v. Public Svc. Comm'n,* 305 Md. 145, 167, 501 A.2d 1307 (1986).

Here, the Board gave the appropriate weight to DR 00–1, treating it akin to a precedential adjudicatory ruling. The

Board recognized that it could have reconsidered DR 00–1, but "none of the respondents presented any expert testimony to try to persuade the Board that the ruling should be re-examined." In other words, appellants failed to prove to the Board that the facts in this case were significantly different from the facts in the petition on which DR 00–1 was based, or that DR 00–1 should otherwise be reconsidered. It appears that appellants would have the Board disregard DR 00–1 altogether, and conduct a de novo evaluation of whether laser hair removal constitutes the practice of medicine. However, the Board was not free to ignore its prior policy statements. SG § 10–305(b). *See United States v. Heffner*, 420 F.2d 809, 811 (4th Cir.1969) (holding that "an agency of the government must scrupulously observe rules, regulations or procedures which it has established"); *Hopkins v. Maryland Inmate Grievance Comm'n*, 40 Md.App. 329, 335–36, 391 A.2d 1213 (1978); Drafter's Note to SG § 10–214, 1993 Laws of Maryland Ch. 59.

▮▮▮ We also reject the appellants' contention that, by relying on DR 00–1, the Board gave it the force of a regulation. As we just discussed, the Board properly treated DR 00–1 as binding precedent, not as a regulation. It is quite clear that appellants were charged with violating the Maryland Medical Practice Act, not DR 00–1. Moreover, we do not agree with appellants that the Board was required to address its laser hair removal policy through the formal rulemaking process. An administrative agency generally has discretion over whether to proceed by adjudication or by rulemaking in developing a particular policy. *See Consumer Protection Div. v. Consumer Publishing Co.*, 304 Md. 731, 754–56, 501 A.2d 48 (1985). However, an agency must follow the formal rulemaking process when "a policy of general application, embodied in or represented by a rule, is changed to a different policy of general application." *CBS, Inc. v. Comptroller of Treasury*, 319 Md. 687, 696, 575 A.2d 324 (1990).

Here, the Board's reliance on DR 00–1 did not change prior policy of general application to a new policy of general applica-

tion. Appellants have submitted no evidence that, prior to their hearing, it was the generally applicable policy of the Board that a person who is not a nurse, physician assistant, or licensed health professional of any kind, may perform laser hair removal procedures without any medical supervision.[14] At most, appellants argue that they personally believed that to be the policy of the Board, a contention which we address in section III, infra.

## B. Validity of DR 00-1

 Appellants also challenge the validity of DR 00-1 itself, arguing that the ruling is void because the Board failed to follow its own regulations in issuing the ruling. The appellants did not make this argument in the proceedings below, and the Board argues that the argument is therefore waived. We agree. The Court of Appeals has repeatedly emphasized that a reviewing court "may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency." *Dept. Health & Mental Hygiene v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051 (2001).

Appellants cite *Motor Vehicle Administration v. Lytle,* 374 Md. 37, 821 A.2d 62 (2003), for the proposition that pure questions of law, like issues of statutory construction, are reviewable even if not raised in the initial agency proceedings. In *Lytle,* the Court held that the MVA did not waive its right to appeal the ALJ's interpretation of a statute, even though it appeared at the administrative hearing only through submit-

---

14. Appellants also argue that by subsequently adopting a formal regulation banning the delegation of laser hair removal to non-medical staff, the Board "acknowledged the appropriateness of proceeding by regulation as opposed to declaratory ruling." *See* COMAR 10.32.09. It is unclear why the Board felt the need to promulgate a formal regulation after appellants' hearing, but it is also irrelevant to the question of whether the policy statement set forth in DR 00-1 was such that formal regulation was required. Regulation may often be desirable, for the sake of clarity, even where not legally required. In any event, the Board's subsequent adoption of a regulation on this point is not probative of the material issues in this appeal.

ted documents, presenting no additional argument. *Id.* at 55–56, 821 A.2d 62. The Court held that it was only limited to the hearing record on questions of fact, and that the purely legal issue of statutory interpretation was reviewable because the "grounds relied on by the agency are identical to the issues the MVA raises [on appeal.]" *Id.* Thus, *Lytle* is fully consistent with *Campbell* and offers no support for the appellants. The administrative decision in this case in no way encompasses the question of whether the Board complied with procedures set forth by SG § 10–304(b) and COMAR 10.32.16.03(c) when it issued DR 00–1. Therefore, despite the purely legal nature of the question, it is not preserved for appellate review.

## C. Board's Conclusion That Laser Hair Removal Is The Practice Of Medicine

Next, appellants argue that "even assuming DR 00–1 was valid and could be used against appellants, the Board's decision that laser hair removal constitutes the practice of medicine is entitled to little deference and was erroneous." Rather than focusing on the board's decision *at the hearing below* that laser hair removal constitutes the practice of medicine, appellants have chosen to attack the substance of DR 00–1 and the process by which the Board arrived at that ruling. The Board issued DR 00–1 in 2002, one year before Nazemzadeh and Rahmati began performing laser hair removal and seven years prior to appellants' hearing in this case. There is a statutory procedure for judicial review of declaratory rulings, SG § 10–305, and agency reconsideration of such rulings, COMAR 10.32.16.04. The time for appealing DR 00–1 has long since expired. *See* Md. Rule 7–203. Thus we will not review DR 00–1, except to the extent that the ruling was discussed by witnesses at appellants' hearing and relied upon by the Board in its final decision.

The issue before us is whether the Board erroneously concluded that laser hair removal constituted the practice of medicine. Although we review questions of law de novo, we give considerable weight to the Board's interpretation of its own statute, and we generally will not disturb the

Board's ruling as long as its interpretation of the statute is reasonable. *See Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 69–70, 729 A.2d 376 (1999).

As defined in, HO § 14–101(*l* )(1), to "practice medicine" is "to engage, with or without compensation, in medical: (i) diagnosis, (ii) healing, (iii) treatment, or (iv) surgery." The question before the Board at appellants' hearing was whether laser hair removal constituted "surgery," as suggested by DR 00–1. Karen Wulff, a public policy analyst for the Board of Physicians, testified that the Practice of Medicine Committee ("POMC") had made at least two public statements on the subject of laser hair removal prior to issuing DR 00–1. First, in 1997, the committee concluded that laser hair removal was a "non-delegable act," meaning that it had to be performed by the physician. In 1998, the POMC reconsidered, at the request of the Physician Assistant Advisory Committee, and concluded that a licensed Physician Assistant could perform laser hair removal under the supervision of a physician. When the Board received the petition for a declaratory ruling in 2000, it was referred to the POMC, which conducted a more thorough review of the literature and concluded that laser hair removal was a surgical act.

In DR 00–1, the Board adopted the Board of Nursing's definition of an "ablative surgical procedure" [15] as "a surgical procedure designed to destroy or excise by use of a laser." Regarding laser hair removal, the Board concluded that "since the goal of the procedure is designed to destroy or damage the hair follicle ... it is clear that the use of lasers for hair removal is an ablative procedure." [16] DR 00–1 was admitted

---

**15.** Ablation means "removal of a body part or destruction of its function, as by surgery, disease, or noxious substance." Stedman's Medical Dictionary (27th ed. 2003).

**16.** This definition was taken from the Board of Nursing's Declaratory Ruling 97–1, in which the Board of Nursing concluded that registered nurses could perform "selective laser" procedures under direct physician supervision. The Nursing Board defined "selective lasers" as those penetrating 2 millimeters into the skin, while "non-selective lasers" penetrate greater than 3 millimeters. Either type of laser could

into evidence at the hearing, as was the Board of Nursing declaratory ruling which it referenced. Wulff testified that DR 00-1 is consistent with the policy of the American Medical Association, which also defines laser hair removal as a surgical act.

Additionally, Wulff explained that physicians may delegate a "technical act" to nonlicensed individuals. A "technical act" is defined by COMAR 10.32.12.02 as "a routine medical or surgical act which does not require medical judgment and is performed *with the* supervision as specified within this chapter." (emphasis added). Wulff testified that, in the absence of a declaratory ruling, a physician is expected to rely upon the training and education required for licensure to decide whether a particular act requires medical judgment or not. Dr. Mesbahi testified at the hearing that she did not personally believe laser hair removal constituted surgery because the depth of skin penetration was less than 2 millimeters. There was no expert testimony on the issue.

Given the above, we find that it was reasonable for the Board to find that laser hair removal was a surgical act, encompassed in HO § 14–101($l$)(1)'s definition of the practice of medicine. The Board was entitled to treat DR 00-1 as precedent, as we have already discussed, and appellants presented no expert testimony or other evidence on which the Board could rely in finding that laser hair removal was not surgical, aside from the personal opinion of Dr. Mesbahi. Moreover, appellants cite no authority supporting the proposition that Maryland law permits a layman, unlicensed in any health profession, to perform laser hair removal without any

---

be used in an "ablative surgical procedure." Thus, appellants' argument that DR 97-1 supports their view that laser hair removal is not surgical is misguided. The Board of Physicians did not misinterpret DR 97-1, and the ruling, which permits licensed nurses to perform laser hair removal procedures under a strict set of supervisory conditions, provides absolutely no support for the proposition that Nazemzadeh and Rahmati, who were not licensed health professionals of any variety, could perform such procedures without medical supervision.

supervision. We therefore agree with the Board's legal conclusions.

## II. Board's Duty To Notify Appellants Of Declaratory Ruling 00–1

■ Next, appellants claim that because the Board failed to notify them of Declaratory Ruling 00–1 until October of 2005, they were deprived of due process in violation of the Fourteenth Amendment to the U.S. Constitution and Article 24 of the Maryland Declaration of Rights.

■ It is well-established that an individual has a legitimate property interest in the outcome of a regulatory board's proceedings regarding a professional license. *See Regan v. Board of Chiropractic Examiners,* 120 Md.App. 494, 510, 707 A.2d 891 (1998). Due process requires that the interested party be afforded notice and the opportunity to be heard. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950). There is no allegation that appellants were not notified of the hearing or that they did not have the opportunity to appear.

Rather, appellants claim that they were not notified of the illegality of their conduct. In *Benik v. Hatcher,* the Court of Appeals noted that a landlord is presumed to know the law governing habitability of premises, just as a motorist is presumed to know the laws regulating motor vehicles. 358 Md. 507, 532, 750 A.2d 10 (2000). A physician is likewise presumed to know the laws regulating the practice of medicine, as are other individuals who provide services to patients in a medical setting. Importantly, appellants were charged with violating the Maryland Medical Practice Act, not DR 00–1. There is no dispute that the Maryland Medical Practice Act is a law and everyone is charged with knowledge of the law. *Samson v. State,* 27 Md.App. 326, 330, 341 A.2d 817 (1975). The Board's alleged failure to notify appellants of DR 00–1 is irrelevant.[17]

---

17. We note that an agency is not required to publish declaratory rulings in either COMAR or the Maryland Register. *See* SG Art. §§ 7–205, 7–206.

The burden is on appellants, who are presumed to have knowledge of the Medical Practice Act, to inquire with the Board before delegating or engaging in conduct that may constitute the practice of medicine. It is not the duty of the Board to locate and notify every person who may be performing laser hair removal that their behavior may be unlawful.[18] It is sufficient that DR 00-1, and preceding POMC advisory letters, were readily available to anyone who inquired with the Board about its policy on laser hair removal.[19] *See* also n. 20, infra.

### III. *Mens Rea:* Must The Board Prove That Appellants Knowingly Violated Declaratory Ruling 00-1?

 Next, appellants contend that the Board erred by failing to require proof that they knowingly violated the law. At the proceeding below, the Board concluded that a finding of knowing or willful violation was not required because the statutes appellants violated contained no *mens rea* requirement. The Board also rejected appellants' attempt to rely on criminal cases for the proposition that strict liability crimes are disfavored. We agree with the Board on both points.

Appellants were charged with violating several civil regulatory statutes. The statutes, HO §§ 14-301, 14-601, and 14-404(a)(2), (3) and (18), do not contain a *mens rea* requirement. Other provisions within the same statutory scheme contain the language "willful" or "knowing" where the legislature intended to require a particular mens rea. *See,* e.g., HO § 14-

---

**18.** We also reject appellants' argument that the Board's subsequent adoption of a regulation banning the delegation and assignment of laser hair removal procedures by physicians is proof that the earlier DR 00-1 was inadequate notice.

**19.** This information was available from even more popular sources. For example in 2003, the General Assembly's website reported the impact of HB 376's inclusion of the regulation of electrology practice within the State Board of Nursing. The Fiscal and Policy Note for the bill noted the decline in the use of electrology services: "Other health care professionals, such as licensed practical nurses, can perform similar and more modern procedures including use of laser technology."

404(a)(12) (stating that the licensee may be penalized if he or she "willfully makes or files a false report ..."); § 14–404(a)(17) ("makes a willful misrepresentation in treatment"). Thus, it is clear that this was not an accidental omission. *See State Cent. Collection Unit v. Jordan*, 405 Md. 420, 431, 952 A.2d 266 (2008) (concluding that legislature intentionally omitted a *mens rea* requirement from a particular provision when other provisions within the same statutory scheme contained such a requirement).

 The presumption against strict liability offenses in criminal law is irrelevant. Strict liability is common in the area of regulatory offenses. As the Supreme Court has explained:

> Many violations of such [strict liability] regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. *Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities.*

*Morissette v. United States*, 342 U.S. 246, 255, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (emphasis added). For all of the reasons suggested by the Supreme Court, public policy mitigates strongly against permitting a defense of ignorance for the charge of practicing medicine without a license.[20] Therefore,

---

**20.** Here, for example, appellants used a laser machine sold only to physicians to perform a "procedure" in a medical office. Had they

we affirm the decision of the circuit court which upheld the Board's conclusion that appellee had violated State law.[21]

## IV. The Sanctions Are Not Arbitrary And Capricious

Finally, in the cross-appeal, appellee contends that the circuit court erred by finding that the fines imposed on Nazemzadeh ($5000) and Rahmati ($1000) and the order that Dr. Mesbahi permanently cease and desist from performing laser hair removal were arbitrary and capricious "because the

bothered to contact the Board to inquire as to the relevant law, as Dr. Mesbahi was contractually obligated to do, the appellants would have quickly discovered that laser hair removal could not be performed by an unsupervised layperson with no medical training. Based on the record in this case, in fact, it has never been the policy of the Board that individuals holding no professional license could perform laser hair removal without medical supervision. DR 00–1, DR 97–1, and the inquiries to the Board made prior to DR 00–1 all concerned the circumstances under which licensed health professionals, such as nurses and physician assistants, could perform laser hair removal. In each of those official statements, the Board required, at a minimum, that the procedure be performed (1) by a licensed health professional, and (2) under the supervision of a physician. Appellants met neither of these conditions. Even if they sincerely believed they were in compliance with the law, that belief was so patently unreasonable as to suggest willful ignorance. Allowing appellants to benefit from a defense of ignorance, willful or accidental, would effectively strip the Maryland Medical Practice Act of all meaning.

**21.** On February 3, 2011, appellants filed a motion to supplement the record pursuant to Maryland Rule 8–414, which appellee opposed. A reviewing court is prohibited from considering new evidence not presented to the administrative agency. *See Erb v. Maryland Dept. Environment,* 110 Md.App. 246, 266–67, 676 A.2d 1017 (1996). However, Md. Rule 8–414 permits the Court to "order that an error or omission in the record be corrected." In their motion, appellants seek to introduce: (1) an affidavit from a client regarding statements made to her by Karen Wulff regarding the effect of declaratory rulings; (2) the Board's Fall 2010 newsletter, which discusses a regulation concerning laser hair removal passed after appellants' hearing; and (3) a consent order from another physician charged with impermissibly delegating laser hair removal to non-medical staff, showing that he received lesser sanctions than Dr. Mesbahi. None of this evidence was presented to the court below. Because there was no error or omission in the record transmitted from the circuit court, appellants' motion to supplement is denied. *See Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC,* 388 Md. 1, 10–11, n. 9, 878 A.2d 567 (2005).

Board did not sufficiently articulate its reasons for imposing these sanctions."

An administrative agency has broad discretion to impose sanctions it deems appropriate, and the reviewing court must give great deference to the agency's decisions on the issue of sanctions. *Md. Transp. Auth. v. King*, 369 Md. 274, 291, 799 A.2d 1246 (2002). An agency's sanction should not be disturbed on appellate review unless "the disproportionality or abuse of discretion was so extreme and egregious that the reviewing court can properly deem the decision to be 'arbitrary or capricious.'" *Id.* The party challenging the sanction has the burden of proving that it was arbitrary and capricious. *See Md. Aviation Admin.*, 386 Md. at 581, 873 A.2d 1145. In our view, appellants/cross-appellees have not met that burden in this case.

The circuit court found the fines against Rahmati and Nazemzadeh to be arbitrary and capricious because the Board did not articulate the basis for the fines. The court explained, "in my view, there needs to be some rational basis articulated as to . . . why is that an appropriate amount in this case as to each of these individuals." Regarding the permanent cease and desist order, the circuit court judge stated: "It seems to me that the purpose for a cease and desist would be to prevent someone who inappropriately used the equipment or didn't know how to use the equipment or wasn't trained in using the equipment."

We believe that the circuit court exceeded the proper scope of judicial review of an administrative sanction. The issue was limited to whether the sanction was so grossly disproportionate to the conduct or such an extreme abuse of discretion as to be arbitrary and capricious. The court made no such finding before remanding the case, and seemingly placed the burden on the Board to justify its sanctions, rather than on the appellants to prove the sanctions were excessive. Indeed, appellants/cross-appellees offered no evidence that the $1000 fine against Rahmati, $5000 fine against Nazemzadeh,

or the permanent cease and desist order were grossly dispro-
portionate given the facts of the case.[22]

Additionally, there is no legal support for the circuit
court's conclusion that the Board must articulate the reasons
for its sanctions the same way it must make findings of fact.
To the contrary, the Court of Appeals has recently stated:

> [T]o the extent that the nature of the sanction imposed
> depends upon the resolution of disputed facts or conflicting
> inferences, the agency must make findings of fact resolving
> such disputes or conflicts. Nevertheless, no statutory provi-
> sion or Court of Appeals administrative law opinion has
> been called to our attention which requires that the imposi-
> tion of a lawful and authorized sanction, within the discre-
> tion of the administrative agency, be justified by findings of
> fact. This Court's holdings make it clear that there is no
> such requirement.

*Md. Aviation Admin. v. Noland,* 386 Md. 556, 580, 873 A.2d
1145 (2005).

Even if an articulation of reasons for the sanctions
were required, the Board's opinion and that of the ALJ
attached as an exhibit to the Board's opinion provided suffi-
cient explanation. With respect to the monetary penalties, the
Board and the ALJ considered the factors specified in CO-
MAR 10.32.02.06B(3).[23] It paid primary attention to the pub-
lic harm factor and adjusted the fines "to be commensurate

---

**22.** We note that the civil fines assessed against the appellants were far
less than the Board was authorized to impose. *See* HO § 14–
606(a)(4)(ii); and COMAR 10.32.02.06B(4). In addition, the ALJ pro-
posed that Dr. Mesbahi's license be suspended for three months—a
recommendation rejected by the Board.

**23.** This regulation states:
Factors in determining the amount of a penalty include, but are not
limited to the following:
(a) The extent to which the respondent derived any financial benefit
from the improper conduct;
(b) The wilfulness of the improper conduct; and
(c) The extent of actual or potential public harm caused by the
improper conduct.

with each participant's degree of responsibility." The ALJ's opinion provided additional detail:

> The Board has proposed a monetary penalty of $20,000.00 which I find to be reasonable and within the parameters of the applicable law. I find that the proposed fine of $5,000.00 against Nazemzadeh is also reasonable especially because she is the one who provided unlicensed laser services to Patients A and B, and caused pain, burns, and scarring to Patient A. I also find that the proposed fine of $1,000.00 against Rahmati is appropriate because she provided unlicensed laser hair treatments to Patient C.

In proposing the cease and desist order against Dr. Mesbahi, the ALJ said:

> Finally, I also recommend the issuance of a cease and desist order against Dr. Mesbahi permanently barring her from engaging in the practice of laser hair removal. I find her conduct in allowing unlicensed persons to engage in the practice of medicine to be so egregious and the potential harm to the public to be so great that her practice in that area should be terminated. I find that this measure is necessary to protect the public from any further risk of harm. Although Dr. Mesbahi's counsel argued that such a prohibition would effectively end her medical practice, I disagree. Dr. Mesbahi is a certified obstetrician and gynecologist and may pursue her medical practice in those areas.

The Board obviously agreed with this reasoning when it noted: "The Board is especially concerned about . . . the potential for patient harm brought about by Dr. Mesbahi's use of unlicensed persons to provide treatment to her patients in her office."

We find that the appellants did not meet their burden of showing that the sanctions imposed against them were arbitrary and capricious.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS TO AFFIRM THE**

DECISION OF THE MARYLAND STATE BOARD OF PHYSICIANS. COSTS TO BE PAID BY APPELLANTS/CROSS–APPELLEES.