REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1581

September Term, 2013

JAMIL ALI

v.

DEPARTMENT OF PUBLIC SAFETY
& CORRECTIONAL SERVICES

Woodward,
*Hotten,
Salmon, James P.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Woodward, J.

Filed: November 30, 2016

*Michele D. Hotten, J., participated in the hearing of this case while still an active member of this Court but did not participate in either the preparation or adoption of this opinion.

Jamil Ali, appellant, was an inmate serving a five-year term of confinement with the Maryland Division of Correction ("DOC") for armed robbery and a concurrent five-year term for use of a handgun in a crime of violence, the latter without the possibility of parole.[1] The DOC commitment staff determined that appellant was ineligible for release on mandatory supervision, because his use of a handgun conviction rendered him ineligible for parole during his term of confinement. *See* Md. Code (1999, 2008 Repl. Vol., 2016 Supp.), § 7-501(b) of the Correctional Services Article ("CS"). Appellant disputed the DOC staff's determination by filing a Request for Administrative Remedy with the Warden of the Maryland Correctional Training Center. After the Warden affirmed the DOC staff's determination, and the Commissioner of Correction failed to respond to appellant's appeal, appellant filed a grievance with the Department of Public Safety and Correctional Services ("DPSCS"), appellee. DPSCS upheld the determination of the DOC commitment staff. Appellant then filed a petition for judicial review in the Circuit Court for Washington County, which affirmed DPSCS's decision.

On appeal, appellant presents a single question for our review:

> Does CS § 7-501(b) bar release of a prisoner by application of diminution credits when that prisoner will never become eligible for parole?

For the reasons set forth below, we answer this question in the affirmative and accordingly, affirm the judgment of the circuit court.

---

[1] Appellant was scheduled to be released from confinement on September 24, 2015.

**BACKGROUND**

On May 9, 2011, appellant pled guilty to armed robbery and use of a handgun in the commission of a crime of violence. The Circuit Court for Baltimore County sentenced him to ten years, with five years suspended, for the armed robbery charge, and five years of incarceration for the handgun charge, to run concurrently. By statute, appellant was ineligible for parole during the five-year handgun sentence. *See* Md. Code (2002, 2012 Repl. Vol.), § 4-204(c)(1)(ii) of the Criminal Law (I) Article ("CL") ("The court may not impose less than the minimum sentence of 5 years and . . . the person is not eligible for parole in less than 5 years."). The sentences commenced on September 24, 2010, and had a maximum expiration date of September 24, 2015. On September 6, 2011, the DOC commitment staff determined that appellant's diminution credits could not be applied to his sentence, which otherwise would have required appellant's release on mandatory supervision prior to the end of his term of confinement. The DOC staff based its decision on appellant's ineligibility for parole during his five-year term of confinement on the handgun charge.

On December 21, 2011, appellant, acting *pro se*, filed a Request for Administrative Remedy with the Warden of the Maryland Correctional Training Center, challenging the DOC commitment staff's determination that he was ineligible for early release on mandatory supervision during his term of confinement. The Warden dismissed appellant's Request for Administrative Remedy on January 3, 2012, on the same grounds as the DOC staff; namely, that, because appellant was ineligible for parole during his term

of confinement, he was also not entitled to release on mandatory supervision prior to the end of such term.

Appellant filed an administrative appeal with the Commissioner of Correction, which was received on January 26, 2012. When the Commissioner did not respond to appellant's appeal within thirty days,[2] appellant filed a grievance with DPSCS's Inmate Grievance Office ("IGO") on March 5, 2012, challenging again the determination of the DOC commitment staff. On February 6, 2013, Scott Oakley, Executive Director of IGO, sent appellant a letter on behalf of DPSCS, upholding the DOC staff's determination.

On March 13, 2013, appellant, acting *pro se*, petitioned for judicial review in the Circuit Court for Washington County. Appellant's attorney noted his appearance on April 15, 2013. The court held a hearing on August 16, 2013, and issued an oral ruling affirming the decision of DPSCS. On August 22, 2013, the court entered an order consistent with its oral ruling.

On September 12, 2013, appellant filed his application for leave to appeal to this Court, which we denied on March 21, 2014. On April 8, 2014, appellant filed a motion for reconsideration of our order denying his application. On May 15, 2014, we issued a show cause order directing DPSCS to "show cause why [appellant's] Motion for Reconsideration and Application for Leave to Appeal should not be granted." DPSCS filed a response to our show cause order on September 17, 2014, stating that it "has no

---

[2] On May 7, 2012, the Commissioner responded to appellant's appeal by dismissing it on the same grounds as stated by the Warden.

3

objection to the granting of the application for leave to appeal." We granted appellant's

application for leave to appeal on October 27, 2014.

## STANDARD OF REVIEW

In reviewing an administrative decision, "[t]his Court looks through the circuit

court's decision and evaluates the decision of the agency." *Wilson v. Md. Dep't of Env't*,

217 Md. App. 271, 283 (2014) (citations and internal quotations omitted). Such review is

limited to deciding "if there is substantial evidence in the record as a whole to support the

agency's findings and conclusions, and . . . if the administrative decision is premised upon

an erroneous conclusion of law." *John A. v. Bd. of Educ. for Howard Cty.*, 400 Md. 363,

381 (2007) (citations and internal quotations omitted).

The Court of Appeals has stated that a court's review of an agency's conclusions of

law is *de novo*. *Lawson v. Bowie State Univ.*, 421 Md. 245, 256 (2011). Although

> [a]n appellate court generally owes no deference to agency decisions
> on pure issues of law, and is free to substitute its judgment for that
> of the agency on such questions . . . [, e]ven with regard to some
> legal issues, a degree of deference should often be accorded the
> position of the administrative agency. We, therefore, ordinarily
> give considerable weight to the administrative agency's
> interpretation and application of the statute that the agency
> administers. Furthermore, the expertise of the agency in its own
> field of endeavor is entitled to judicial respect.

*Mesbahi v. Md. State Bd. of Physicians*, 201 Md. App. 315, 330 (2011) (citations and

internal quotations omitted).

## DISCUSSION

### Mandatory Supervision Versus Parole

4

The Court of Appeals has explained the process by which an inmate is released on

mandatory supervision:

> **We begin with a discussion of diminution credits.** Diminution credits are credits which can be "earned by inmates to reduce the lengths of their confinements." "Assuming an inmate does not forfeit diminution credits as the result of a disciplinary hearing, **the inmate can earn the right to be released on a date much sooner than that designated by his or her original term of confinement."** Once the inmate accumulates "**sufficient credits to earn entitlement to release, the inmate is deemed released under 'mandatory supervision.'"** Under CS § 7-501(a), mandatory supervision is "a conditional release from confinement [granted] to an inmate who is serving a term of confinement of more than 18 months** . . . to the jurisdiction of the Division of Correction . . . and [who] has served the term or terms, less diminution credit[s]."

> There are four types of diminution credits: good-conduct, work (or industrial), educational, and special project credits. Good-conduct credits, which are the subject of this appeal, are different from other diminution credits in that they are deducted "in advance from the inmate's term of confinement, subject to the inmate's future good conduct." Prior to October 1, 1992, inmates, upon incarceration, were prospectively awarded five days of good-conduct credits for each month of their sentence[, regardless of the nature of their sentence . . . ].

*Stouffer v. Holbrook*, 417 Md. 165, 170-71 (2010) (alterations in original) (emphasis

added) (citations omitted).

By contrast, the Court has characterized parole as follows:

> The Supreme Court has said, "[t]he essence of **parole is** release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." Our Legislature has defined it as "**a conditional release from imprisonment, granted by the Maryland Parole Commission . . . [which] entitles the recipient . . . to leave the institution in which he is imprisoned, and to serve the remainder of his term outside the confines thereof** . . . ." The purpose of

5

> parole is to help individuals reenter society and to alleviate the costs to society of keeping an individual in prison. **While the executive branch, usually through a parole board, is vested with the authority to grant parole and implement its purpose, it is the legislature that establishes the governing procedures and criteria. Thus, parole is a matter of legislative grace, not of constitutional right . . . .**

*Patuxent Inst. Bd. of Review v. Hancock*, 329 Md. 556, 573 (1993) (alterations in original) (emphasis added) (citations omitted).

In summary, an inmate is released on mandatory supervision automatically as soon as a sufficient number of diminution credits have been earned, while an inmate is released on parole only if the Maryland Parole Commission finds the inmate suitable for parole, after consideration of certain factors set forth in the statute. *See* CS §§ 7-305, -501. Those factors include "the circumstances surrounding the crime[,]" "the physical, mental, and moral qualifications of the inmate[,]" "the progress of the inmate during confinement," and the compatibility of the inmate's release on parole "with the welfare of society." CS § 7-305(1), (2), (3), (6). In general, an inmate is eligible for parole *before* he or she is subject to automatic release on mandatory supervision.[3]

### Plain Language of the Statute

The statutory provision at issue in this appeal is CS § 7-501, which provides:

---

[3] Logic seems to dictate that an inmate would be eligible for discretionary release on parole based upon consideration of a variety of factors, only one of which is conduct during confinement, *before* an inmate is automatically released on mandatory supervision based on an accumulation of diminution credits, which are awarded solely for conduct during confinement. Indeed, the Parole Commission would be superfluous if an inmate was subject to automatic release on mandatory supervision before the inmate was eligible for discretionary release on parole.

(a)    *In general* - **Except as provided in subsection (b) of this section, the Division of Correction shall grant a conditional release from confinement to an inmate who:**

    (1)    is serving a term of confinement of more than 18 months;

    (2)    was sentenced on or after July 2, 1970, to the jurisdiction of the Division of Correction; and

    (3)    **has served the term or terms, less diminution credit awarded under Title 3, Subtitle 7 and Title 11, Subtitle 5 of this article.**

(b)    *Eligibility requirements* - **An inmate convicted of a violent crime** committed on or after October 1, 2009, **is not eligible for a conditional release** under this section **until after the inmate becomes eligible for parole under § 7-301(c)** or (d) of this title.

CS § 7-501 (italics in original) (bold emphasis added).

Section 7-301(c), referenced in Section 7-501(b), governs the determination of an inmate's parole eligibility.   Section 7-301(c)(1) provides, in relevant part:

(ii) **An inmate** who has been sentenced to the Division of Correction after being convicted of a violent crime committed on or after October 1, 1994, and **who has been sentenced to more than one term of imprisonment, including a term during which the inmate is eligible for parole and a term during which the inmate is not eligible for parole, is not eligible for parole until the inmate has served the greater of**:

    1. one-half of the inmate's aggregate sentence for violent crimes;

    2. one-fourth of the inmate's total aggregate sentence; or

    3. **a period equal to the term during which the inmate is not eligible for parole**.

7

CS § 7-301(c)(1)(ii) (emphasis added).

In the case *sub judice*, appellant was "sentenced to more than one term of imprisonment, including a term during which the inmate is eligible for parole,"—his five-year non-suspended armed robbery sentence—"and a term during which the inmate is not eligible for parole"—his concurrent five-year sentence for his use of a handgun in committing a violent crime. CS § 7-301(c)(1)(ii); *see also* CL § 4-204. Thus, under Section 7-301(c)(1)(ii)(3), appellant was not eligible for parole until he had served his entire five-year sentence.

Notwithstanding his ineligibility for parole, appellant argues that Section 7-501(b) does not bar his release on mandatory supervision[4] prior to the end of the five-year term for the handgun conviction. Specifically, appellant maintains that, because (1) Section 7-501(b) precludes conditional release "until after" he becomes eligible for parole, and (2) he will never become eligible for parole until his maximum expiration date, Section 7-501(b) "does not apply, as the event specified in the law will not occur." As a result, according to appellant, his diminution credits must be applied to permit his release on mandatory supervision prior to the end of his term of confinement.

DPSCS responds that under the plain meaning of Section 7-501(b), "[i]nmates who do not become eligible for parole during their terms of confinement can never be released on mandatory supervision." According to DPSCS, the purpose of this provision is to

---

[4] Under the statute "mandatory supervision" "means a conditional release from confinement that is granted to an inmate under § 7-501 of this title." CS § 7-101(g)(1).

prevent an inmate convicted of a violent crime from benefitting from a *mandatory* release from incarceration prior to the date upon which the Maryland Parole Commission, "in the exercise of its *discretion*, could order the inmates released on parole."

We agree with DPSCS that the meaning of Section 7-501(b) bars appellant's release on mandatory supervision prior to the end of his term of confinement. We shall explain.

It is clear that appellant does not become eligible for parole until after he has served five years of incarceration, because under Section 7-301(c)(1)(ii) the greatest period of confinement that appellant must serve to become parole eligible is the five-year sentence imposed on the handgun conviction. *See* CS § 7-301(c)(1)(ii) (stating that an inmate, like appellant, "is not eligible for parole until the inmate has served the greater of . . . 3. a period equal to the term during which the inmate is not eligible for parole.") Appellant's maximum term of confinement, however, is also five years, because his two five-year sentences are concurrent. Therefore, under the plain language of Section 7-501(b), appellant cannot be released on mandatory supervision before serving five years of incarceration, because he does not "become[ ] eligible for parole under § 7-301(c)" "until after" his maximum term of confinement has been served in its entirety.

We reject appellant's argument that Section 7-501(b) does not apply to him because "he will never become eligible for parole." The concept of *never* becoming eligible for parole includes the concept of *not* becoming eligible for parole. If we were to agree with appellant's interpretation of Section 7-501(b), appellant would be released on mandatory supervision even though he is *not* eligible for parole. This result would directly contradict the language of Section 7-501(b), which prevents inmates who are convicted of a violent

9

crime from becoming eligible for release on mandatory supervision "until after the inmate becomes eligible for parole." In appellant's case, because his maximum period of confinement is five years, and he is not eligible for parole during those five years, we hold that, under the plain meaning of Section 7-501(b), appellant is also not eligible for release on mandatory supervision during those five years.

## Legislative History

### (A) Fiscal and Policy Note

Appellant nevertheless, argues that his interpretation of Section 7-501(b) is supported by the statute's legislative history. Appellant relies on the Fiscal and Policy Note (the "Note") for his contention that the General Assembly, which passed Section 7-501(b) in 2009, did not intend for Section 7-501(b) to apply to inmates who will never become eligible for parole during their terms of confinement, because the General Assembly "was under the impression that application of the statute would be very infrequent and the resulting increase in incarceration costs would be minor." *See* Fiscal and Policy Note, S.B. 654, at 1 (2009). According to appellant, the purpose of Section 7-501(b) was to address the rare situation in which pre-1996 offenders (1) earned diminution credits, (2) were released on parole, (3) committed a new crime, (4) received a new sentence and a revocation of their parole from the first sentence, and (5) the diminution credits from the first sentence were applied to the second sentence to allow release on mandatory supervision prior to parole eligibility on that sentence. Appellant concludes that Section 7-501(b) "was never intended to apply to the prisoner who will never become eligible for parole[,]" because such application would "affect hundreds of prisoners in

10

[appellant's] situation[,]" which would have a substantial fiscal impact.

DPSCS responds that, because the language of Section 7-501(b) "is clear and unambiguous," this Court need not resort to an examination of the legislative history. In the alternative, DPSCS contends that appellant's legislative history argument is without merit, because the General Assembly already corrected the problem of applying pre-parole diminution credits to a post-parole sentence by enacting Section 3-711, which went into effect in 1996. According to DPSCS, appellant's interpretation of Section 7-501(b) would render Section 3-711 superfluous, thus violating the principle that, when enacting a statute, the General Assembly has full knowledge as to prior and existing law on the same subject.

Because the plain language of Sections 7-501(b) and 7-301(c)(1)(ii), when read together, dictate our result, we need not consider the legislative history behind Section 7-501(b). Even if we did consider such history, however, we are not convinced by appellant's argument regarding the Note. The Note is entitled "Violent Crimes-Conditional Release Under Mandatory Supervision-Limitation" and states at the beginning: "This bill specifies that an inmate convicted of a violent crime committed on or after October 1, 2009 is not eligible for a mandatory supervision release resulting from earned diminution credits until after the inmate becomes eligible for parole." Fiscal and Policy Note, S.B. 654, at 1 (2009). The Note goes on to discuss the "Current Law" in the "Analysis" section. In that section, there is a summary of the current law on diminution credits and parole eligibility found in CS §§ 3-701 *et seq.*, CS §§ 11-501 *et seq.*, and CS §§ 7-301 *et seq.* *See id.* at 1-3. The Note ends with the following section:

11

**Background:** According to the Maryland Parole Commission, in calendar 2008, three inmates sentenced to a prison term for a violent crime were released on a mandatory supervision release (due to diminution credits earned) before serving one-half of their sentence. Although the number of such releases tends to vary by year, the number tends to be quite small in any given year.

*Id.* at 3.

The Note also includes a "Fiscal Summary": "Because the bill's provisions would delay a mandatory supervision release for a small number of inmates annually, it is not expected to have a measurable impact on State correctional operations or costs." *Id*. at 1.

Contrary to appellant's contention, the General Assembly closed the pre-1996 offender loophole when it enacted Section 3-711, and nothing in the Note indicates that the purpose of Section 7-501(b) was to close such loophole. Section 3-711, which was passed in 1999, provides: "If an inmate is convicted and sentenced to imprisonment for a crime committed while on parole and the parole is revoked, diminution credits that were awarded before the inmate's release on parole may not be applied toward the inmate's term of confinement on return to the [DOC]." Thus, under Section 3-711, any diminution credits earned before release on parole could not be applied upon the inmate's return to DOC to the "term of confinement," which includes the reimposed first sentence and the new second sentence. *See* COMAR 12.02.06.01(B)(18)(e).

Also, although the Background section of the Note refers to the release of three inmates on mandatory supervision, due to diminution credits earned, when they were ineligible for parole for not having served one-half of their sentences, nothing in that section precludes application of the revised statute to prevent appellant's release while he,

12

too, was ineligible for parole, even if he did not become eligible for parole prior to the end of his term of confinement.

Finally, the Note does not detail what the Fiscal Summary considered to be a "small number of inmates annually," nor does it quantify a "measurable impact on State correctional operations or costs." Fiscal and Policy Note at 1. In his brief, appellant relies on figures from The Price of Prisons: Maryland, a report by the Vera Institute of Justice, to argue that DPSCS's interpretation of Section 7-501(b) would have an enormous impact on state correctional costs, and thus the General Assembly could not have intended such interpretation. The General Assembly, however, clearly did not consider the Vera Institute of Justice report when it debated and passed Section 7-501(b), as the report was published almost three years after the passage of Section 7-501(b). Accordingly, the Vera Institute of Justice report is not part of the legislative history of Section 7-501(b) and cannot be relied upon in any interpretation thereof. Therefore, the Note does not support appellant's view of the legislative history of Section 7-501(b).

*(B) Department of Legislative Services Report*

Appellant further contends that, if the General Assembly wanted to prevent inmates ineligible for parole from benefitting from their diminution credits, it would have done so explicitly, as it has done in other sections of the Correctional Services Article. Appellant notes that a 2011 Department of Legislative Services ("DLS") report, Maryland Diminution Credit System, lists the types of inmates who are ineligible from earning diminution credits, and that appellant "does not fit into any of these categories." According to appellant, the DLS report states that "[a]n inmate serving a sentence that is

13

by statute nonparolable may still earn diminution credits. Nothing in law prohibits the awarding of diminution credits on a non[-]parolable sentence."

DPSCS responds that appellant fails to appreciate the distinction between the earning and awarding of diminution credits, on the one hand, and the application of such credits to reduce an inmate's sentence, on the other hand. According to DPSCS, the DLS report is correct that an inmate like appellant, who is ineligible for parole, may earn or be awarded diminution credits; however, such credits cannot be applied to reduce his non-parolable sentence.

We disagree with appellant's contention that, if the General Assembly wanted to prevent inmates ineligible for parole from benefitting from their diminution credits, it would have done so explicitly in Section 7-501, because the General Assembly already provided such restriction in appellant's case in the "Use of handgun or antique firearm in commission of crime" statute ("the handgun statute"). *See* CL § 4-204. We shall explain.

The handgun statute provides that a person who uses a handgun in the commission of a crime of violence "*shall be sentenced to imprisonment for not less than 5 years* and not exceeding 20 years,"[5] and, "except as otherwise provided in § 4-305 of the Correctional Services Article, *the person is not eligible for parole in less than 5 years*." CL § 4-204(c)(1)(i)-(ii) (emphasis added). The handgun statute was originally passed in 1972,

---

[5] CS § 4-305 grants to the Board of Review of the Patuxent Institution the discretionary authority to grant parole "for a period not exceeding 1 year" to an inmate who is transferred to the Institution for treatment. CS § 4-305(a). Upon review of an inmate's status before expiration of the parole period, the Board of Review "may extend the parole." CS § 4-305(c)(2)(ii).

after the General Assembly found "an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns[.]" *York v. State*, 56 Md. App. 222, 228 (1983) (internal quotations omitted) (quoting Art. 27, § 36B(a)(i)), *cert. denied*, 299 Md. 137 (1984). The stated purpose of the handgun statute is "to reduce the especially high potential for death or serious injury that arises when a handgun, as distinguished from some other weapon, is used in a crime of violence." *Id.* at 229. In other words, the General Assembly responded to the high incidence of the use of handguns in the commission of violent crimes by creating a *mandatory, five-year minimum, non-parolable* sentence for inmates who were convicted of using a handgun in the commission of a violent crime. *See* CL § 4-204; *York*, 56 Md. App. at 228-29.

To hold that Section 7-501(b) does not apply to appellant, who is mandated by the handgun statute to serve a minimum five-year, non-parolable sentence, would allow appellant to be released on mandatory supervision *before* he serves his mandatory five years of confinement, thus contravening the clear intent of the handgun statute, as well as its purpose of discouraging the use of handguns in the first place. *See Gwin v. Motor Vehicle Admin.*, 385 Md. 440, 462 (2005) ("We accept the presumption that the Legislature intended that which it enacted and neither statute should be read so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory." (alterations omitted) (citations and internal quotations omitted)); *see also Board of Educ. of Garrett Cty. v. Lendo*, 295 Md. 55, 63 (1982) ("The General Assembly is presumed to have had,

and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law.").

Also, appellant's reliance on the 2011 DLS report is misplaced. The 2011 DLS report is not part of the legislative history of Section 7-501(b), the report having been written two years after the enactment of that section. Even if we were to consider the 2011 DLS report, the report does not explicitly address whether diminution credits may be applied to an inmate's sentence under the handgun statute before the inmate has served his minimum five-year, non-parolable sentence. Moreover, although the DLS report does state that an inmate serving a non-parolable sentence may earn or be awarded diminution credits, we accept DPSCS's contention that "*earning or awarding* of credits and the *application* of credits are two different things." *See* CS § 3-711 ("If an inmate is convicted and sentenced to imprisonment for a crime committed while on parole and the parole is revoked, *diminution credits that were awarded* before the inmate's release on parole *may not be applied* toward the inmate's term of confinement on return to the Division." (emphasis added)).

## Rule of Lenity

Finally, appellant argues that, because Section 7-501(b) is ambiguous, this Court must apply the rule of lenity. According to appellant, "[t]he rule of lenity is the tiebreaker here[,]" which "tips the scales in the prisoner's favor." DPSCS responds that the rule of lenity does not apply to this case, because Section 7-501(b) is clear and unambiguous.

We agree with DPSCS that the rule of lenity has no application in the instant case, because this Court is "presented with statutory provisions which are unambiguous on their

16

face and a legislative history which gives [ ] no reason to pause over the manner in which these provisions should be interpreted." *Albernaz v. United States*, 450 U.S. 333, 343 (1981); *see also Jones v. State*, 336 Md. 255, 261 (1994) ("The rule of lenity, however, is a maxim of statutory construction which serves only as an aid for resolving an ambiguity and it may not be used to create an ambiguity where none exists." (citing *Albernaz*, 450 U.S. at 343)).

Because the plain language of Section 7-501(b) dictates that appellant is not eligible for release on mandatory supervision until he becomes eligible for parole, and appellant did not become eligible for parole until his maximum expiration date, DPSCS did not err in deciding that appellant's diminution credits could not be applied to reduce his term of confinement.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**